# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| *In Re:* | CASE NO: 19-11362-JPS |
| | CHAPTER 7 |
| PAUL F. ZACHARIAS, SR., and VIVIAN E. ZACHARIAS, | JUDGE: JESSICA E. PRICE SMITH |
| Debtors. | **CREDITORS' OBJECTION TO DEBTORS' MOTION TO AVOID JUDGMENT LIENS AND MEMORANDUM IN SUPPORT** |

Creditors hereby object to Debtors' most recent Motion to Avoid Judgment Liens, Doc. 89, which was filed on April 8, 2020 in contravention of this Court's express orders to not file such a motion due to mootness. In support of this objection, Creditors respectfully refer the Court to the attached memorandum.

Respectfully submitted,

 /s/ Kevin M. Gross
LEWIS A. ZIPKIN, ESQ. (0030688)
Kevin M. Gross, Esq. (0097343)
ZIPKIN WHITING CO., L.P.A.
Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122
Telephone: (216) 514-6400
Facsimile: (216) 514-6406
Email: kgross.zipkinwhiting@gmail.com
   zfwlpa@aol.com

*Attorneys for Creditors Natalie Locigno and Zipkin Whiting Co., L.P.A.*

# LAW AND ARGUMENT

After the Court granted Creditors partial summary judgment in the Adversary Proceeding related to this case, No. 1:19-AP-01050, the Court issued a docket entry on the primary bankruptcy case mooting Debtors' motion to avoid Creditors' judgment liens on the Gate Post property. The issue was properly mooted because Creditors would be able to refile and reattach their judgment liens on the Gate Post property at the close of this case, regardless of when or how the case ended, because Creditors' judgments were declared nondischargeable. Despite the Court's docket entry, on April 8, 2020, Debtors again moved—in direct contravention to the Court's orders—to avoid Creditors' judgment liens. Debtors' willful refusal to follow the Court's orders has caused Creditors to incur significant legal fees, and Creditors respectfully request that the Court issue an order directing the Debtors to pay the legal fees related to drafting this Objection. Should the Court make it to the merits of Debtors' argument, Creditors submit the following brief in opposition to Debtors' Motion to Avoid Judgment Liens.

### I. Paul Zacharias Sr. Cannot Claim a Homestead Exemption on the Gate Post Property Because That Was Not His "Residence" at the Time He Filed for Bankruptcy.

A debtor may exempt one item of real property -- provided it was his *principal* place of dwelling when he filed bankruptcy. *Ohio Rev. Code* § 2329.66(A)(1)(b), *In re Aubiel*, *In re Wengerd*, *In re Felgner*, *infra*.

The homestead exemption is codified in *Ohio Rev. Code* § 2329.66(A)(1)(b) and, in pertinent part, it provides that a debtor may claim as exempt "one parcel or item of real .

. . property that the person . . . uses as a residence." "Residence" means the premises serve as the debtor's "*principal* place of dwelling." *In re Aubiel*, 534 B.R. 300, 305 (6th Cir. BAP 2015) (emphasis in original); *In re Aerni*, Bankr.N.D.Ohio No. 15-14892, at *4 (citing *In re Aubiel*).

In *In re Wengerd*, 453 B.R. 243, 249–50 (6th Cir. BAP 2011), the Sixth Circuit Bankruptcy Panel held that "[o]n the date they filed their petition for relief, the Debtors were using the Ohio home as their principal residence, and therefore, they are entitled to the homestead exemption as provided by Ohio Rev. Code § 2329.66(A)(1)(b)." *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991) (stating that exempt property is determined "on the date of the filing of the petition").

Similarly, in *In re Felgner*, No. 11-32274, 2011 WL 5056994, at *14 (Bankr. N.D. Ohio Oct. 24, 2011), the United States Bankruptcy Court for the Northern District of Ohio held, "when determining a debtor's homestead for exemption purposes, the location of a debtor's residence is fixed at the time the bankruptcy case is filed; a debtor's future intent to abandon their homestead is not considered."

Here, Debtor Paul Zacharias Sr. cannot claim a homestead exemption in 10767 Gate Post because it was not his "*principal* place of dwelling" when he filed bankruptcy. *Id.*; *In re Wengerd and In re Aubiel*, *supra*. At the time he filed bankruptcy, Debtor Paul Zacharias Sr.'s "*principal* place of dwelling" was 19 Manning Street in Berea, Ohio, a residence he still resides in with his girlfriend and her family:

> Q. And when is -- when did you buy the house on Manning?
> A. That's a good question.
> Q. If I asked you if it was around 2002, would that help you any?
> A. Yeah. Around 2000, 2004. Yeah, it could have been 2002.

Q. You recall that?
A. It was a real -- I don't recall it. But it was a really long time ago. I know its been like 15 years, 16 years. So that would put it around that time.
Q. Okay. That's how long you've been living there?
A. No. No. No. I bought it for rental property.
Q. Oh, for rental property?
A. I rented it for a while, sure.
Q. And to whom did you rent it?
A. College kids. I don't remember their names or nothing now. But their parents signed the lease.
Q. How long ago was that?
A. A long time ago.
**Q. And then you moved into it?**
**A. Yes.**
Q. And that was as a result of splitting up with your wife?
A. No, not splitting up. She was going through her emotions, I guess whatever girls go through when they get to be her age. She was about 50, 55 at the time. And I just moved into the other house and started staying there.
Q. And you had tenants living there with you?
A. Yes, I did.
**Q. And when was the last time you had tenants living <u>with you</u> on Manning?**
**A. There's still a girl living there now, paying electric and the gas, and her daughter and her daughter's boyfriend Joey. And I don't know Joey's last name.**
**Q. And what is your relationship with that tenant?**
**A. She's a good friend of mine, girlfriend like.**
**Q. She's a girlfriend like?**
**A. Uh-huh.**
**Q. When you referenced to her as a girlfriend like, what does that mean?**
**A. It means she's a girlfriend.**
**Q. She's your girlfriend?**
**A. Yeah.**
**Q. Okay. And you've <u>been living</u> with her since when?**
**A. Oh, seven, eight years now maybe, maybe more.**
…
**A. . . . But her and her boyfriend Joey, they're always staying at his house or <u>our house</u>.** They're always staying somewhere.
**Q. <u>Our house being yours on Manning</u>?**
**A. <u>Our house, yes, the one on Manning</u>, yes, where she [his girlfriend's daughter] was brought up.**
…
Q. Okay. And did you just start dating her [Kim Anderson] then?

> A. Yeah, going out with her, uh-huh.
> Q. Going out with her. What does that mean, going out with her?
> A. Going out with her.
> Q. Taking her out on a date?
> A. Yeah.
> Q. Okay. And you eventually became an item, the two of you? Do you know what that means?
> A. Well, I don't know about an item. I'm still a married man. But, yes, I would make love with her, if that's what you're talking about, sure.
> **Q. Okay. <u>And that would constitute the basis of your relationship, where you decided the two of you to live together on Manning</u>?**
> **A. Well, <u>she asked if she could move in with me</u> with her children at the time. She had both her daughters. <u>And I said, yes</u>.**
> …
> **Q. All right. <u>Did that relationship [with Kim Anderson] come to an end</u>?**
> **A. Between her and I?**
> **Q. Yes.**
> **A. <u>No</u>. She still -- she drove me here today.**

*Mr. Zacharias' Dep.* at 18-20, 23-24, 28-31.

Thus, when he filed bankruptcy, Debtor Paul Zacharias Sr.'s "*principal* place of dwelling" was the Manning home, not the Gate Post home. *In re Aubiel, In re Wengerd and In re Felgner*, *supra*. Indeed, at deposition, Debtor Paul Zacharias Sr. testified under oath that he has "been living" with Kim Anderson, his current girlfriend, at the Manning home for "seven, eight years **now** maybe, maybe more." *Mr. Zacharias' Dep.* at 18-20, 28-31. Therefore, at the time he filed this bankruptcy, Debtor Paul Zacharias Sr.'s "*principal* place of dwelling" was the Manning home. *In re Aubiel, In re Wengerd and In re Felgner*, *supra*. Accordingly, his claiming of the homestead exemption in the Gate Post home is unlawful.

Paul Zacharias Jr., who lives with his mom at Gate Post, confirmed that his dad has been living at the Manning home with Kim Anderson, his girlfriend: "Q. All right. Does anyone else live in the house on Gate Post besides you, your mom, your wife and your child? A. No other person lives there." *Mr. Zacharias Jr.'s Dep.* at 23. "Q. How long

5

has your dad and Kim Anderson lived on Manning? MR. NEMETH: Objection. A: I don't know the answer, the full time. I don't know. I don't know when she moved in **with him**." *Id*. at 56. Paul Zacharias Jr. also testified:

> Q. How long have you lived at [10767 Gate Post]?
> A. Boy, well, it's been at least 12 -- I'm going to guesstimate 15 years.
> Q. And that's where your wife also resides?
> A. Correct.
> Q. And your child resides there?
> A. Correct.
> Q. Who else lives there with you?
> A. My mother.
> Q. And how long has your mother lived there with you?
> A. The whole time. I live with her. It's her house.
> Q. That's her house?
> A. Yeah.
> Q. Does anyone else live there with you?
> A. **My dad had moved his belongings there [to Gate Post]. And waiting to see what goes on with this**.
> Q. Before he takes his belongings out, is that the understanding?
> A. No. He's still taking care of the house on Manning.
> Q. All right. And he continues to live at the house on Manning, correct?
> A. **For the most part right now**.

*Id*. at 22-23. Thus, Debtor Paul Zacharias Sr.'s "*principal* place of dwelling" has been at Manning. *In re Aubiel*, *supra*. Debtor Paul Zacharias Sr. cannot, as a matter of law, make Gate Post his "*principal* place of dwelling" by moving "his belongings" to Gate Post. *Id*.; *Mr. Zacharias Jr.'s Dep*. at 22-23. Indeed, in *In re Felgner*, *supra*, the United States Bankruptcy Court for the Northern District of Ohio held that

> when determining a debtor's homestead for exemption purposes, the location of a debtor's residence is fixed at the time the bankruptcy case is filed; **a debtor's future intent to abandon their homestead is not considered**. Accordingly, in this case, the Debtors' future intent to establish a new residence cannot be used to create a homestead exemption in a property which did not constitute their primary residence at the time they filed for bankruptcy relief.

6

In support of their Motion, Debtors cite to three[1] points of law that are entirely inapposite to this case and readily distinguishable: *Law v. Siegel*, 571 U.S. 415 (2014); *In re Mitchell*, No. 13-14494, 2014 WL 1725819 (Bankr. N.D. Ohio Apr. 30, 2014); and *In re Gilman*, 608 B.R. 714 (Bankr. C.D. Cal. 2019). None of the cases Debtors rely on involve a creditor challenging a debtor's use of a homestead exemption on the ground that the debtor did not, in fact, live at the property the debtor sought to exempt at the time the debtor filed for bankruptcy. In contrast, that is precisely what Creditors have set forth above, and in prior filings. Further, the Court has previously mooted arguments on the homestead exemption issue because Creditors would be able to refile and reattach their judgment liens on the Gate Post property due to Paul Zacharias Sr.'s debts being nondischargeable. Notwithstanding, Debtors have raised the issue again in their most recent Motion to Avoid Judgment Liens in direct contravention to the Court's orders.

The holdings of both *Law* and *Mitchell* are inapposite to and distinguishable from this case because Creditors are not seeking for the Court to surcharge Debtors' exemptions due to bad-faith actions or other misconduct. Creditors acknowledge, and both *Law* and *Mitchell* recognize, that federal law already provides Creditors with two remedies for such debtor malfeasance: sanctions under FRBP 9011, which Creditors have not utilized; and a motion to dismiss "for cause" under 11 U.S.C. § 707(a), which Creditors *have* utilized. Creditors argue that the sworn deposition testimony of Paul Zacharias Sr.

---

[1] Debtors cite their third case, *In re Gilman*, 608 B.R. 714 (Bankr. C.D. Cal. 2019), only for the proposition "that denial of discharge does not affect the debtor's ability to void judicial liens that impair his homestead exemption." Debts.' Mot. to Avoid J. Liens, Doc. 89, at 6.

and his son, Paul Zacharias Jr., show conclusively that Paul Zacharias Sr. *did not* use the Gate Post property as his "principal place of dwelling" at the time he filed for bankruptcy. *In re Lusiak*, 247 B.R. at 702. Accordingly, Paul Zacharias Sr. cannot make use of Ohio's homestead exemption statute to protect the Gate Post property.

Most importantly, determining that Paul Zacharias Sr. is not entitled to make use of Ohio's homestead exemption would not result in this Court abusing its authority, contravening *Law v. Siegel* and its progeny, because the question of "residency" is properly based in Section 2329.66(A)(1) and relevant Ohio state caselaw. In 1949, the Ohio Supreme Court held that "[m]ere intention to occupy premises as a home at some future time…is insufficient to establish a homestead." *Mutual Bldg. & Inv. Co. v. Efros*, 152 Ohio St. 369, 373–74 (1949). Subsequently, Ohio's bankruptcy courts have taken the *Efros* holding and determined correctly that "[a] homestead cannot be impressed upon a property that was never used as a primary residence" at the time the debtor filed their bankruptcy petition. *In re Felgner*, at *4; *In re Wengerd*, 453 B.R. at 250. Because the sworn testimony of Paul Zacharias Sr. and his son, Paul Zacharias Jr., indicate that Paul Zacharias Sr. was not using the Gate Post property as his primary residence at the time he filed this bankruptcy petition, the Court should deny the Debtors' motion and prevent Paul Zacharias Sr. from improperly utilizing a homestead exemption under Section 2329.66(A)(1) of the Ohio Revised Code.

**II.     Because Creditors' Judgment Liens Apply Only to Paul Zacharias Sr.'s Undivided One-Half Interest in the Gate Post Property, Vivian Zacharias Cannot Assert Her Homestead Exemption to Avoid Creditors' Liens.**

Independent of whether her husband may avoid Creditors' judgment liens, Vivian Zacharias cannot use Ohio's homestead exemption to do the same because Creditors' liens are not fixed to her undivided one-half interest in the Gate Post property. "As taken from its statutory text, three elements *must* be satisfied for a debtor to avoid a lien under § 522(f)(1): (1) the lien must be a judicial lien; (2) *the lien must be fixed against an interest of the debtor in property*; and (3) the lien must impair an exemption to which the debtor would otherwise be entitled." *In re Jerew*, 415 B.R. 303, 306 (Bankr. N.D. Ohio 2009) (emphasis added). Here, Vivian Zacharias can satisfy only the first and third requisite elements: Creditors' judgment liens resulted from a prior Ohio state court civil action; and the aggregate sum of Creditors' judgment liens and the mortgage on the Gate Post property would, in the abstract, encumber Vivian Zacharias's attempted use of Ohio's homestead exemption. But, most importantly, Creditors' liens are fixed *only* to Paul Zacharias Sr.'s undivided one-half interest in the property, and thus Vivian Zacharias is not entitled to use a homestead exemption to avoid her husband's obligations.

Under 11 U.S.C. 727(b), "discharge from bankruptcy 'discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before commencement of the case[.]'" *In re Haltermon*, 592 B.R. 311, 317 (Bankr. S.D. Ohio 2018). Additionally, "the Sixth Circuit held that 'a discharge under 11 U.S.C. § 727 discharges every prepetition debt, without regard to whether a proof of claim has been

9

filed, unless that debt is specifically excepted from discharge under 11 U.S.C. § 523.'" *In re Haltermon*, 592 B.R. 311, 318 (Bankr. N.D. Ohio 2018) (quoting *In re Madaj*, 149 F.3d 467, 469 (6th Cir. 1998)). Such discharge acts "as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not such debt is waived." 11 U.S.C. § 524(a)(2) (2020). When taken together, these sections of the Bankruptcy Code effectively absolve the debtor of their obligations to most of their prepetition debt.

Here, these two provisions carry increased import because Vivian Zacharias *has* received a discharge from Creditors' judgment liens. In the Adversary Proceeding related to this case concerning debt dischargeability, the Court granted Creditors' Motion for Summary Judgment as to Paul Zacharias Sr., but denied the Motion as to Vivian Zacharias. Ct.'s Feb. 19, 2020 Docket Entry, *Locigno, et al. v. Zacharias, Sr. et al.*, No. 1:19-AP-01050 (Bankr. N.D. Ohio June 19, 2019). Based on this outcome, Vivian Zacharias is free from "any liability" to Creditors for prepetition judgment liens, and her undivided one-half interest in the Gate Post property is similarly released from Creditors' liens. Accordingly, Vivian Zacharias's applicable homestead exemption lacks any avoidance power because there are no liens "fixed against an interest of the debtor in property." *In re Jerew*, 415 B.R. at 306; *Matter of Anderson*, 57 B.R. 953 (Bankr. S.D. Ohio 1986) (holding that husband debtor could avoid judgment liens only because the liens were attached to his undivided one-half interest in the spousal property).

10

Finally, the Gate Post property is a 3,300-square-foot home in Strongsville, Ohio, and has a value of $120.00 per square foot. Thus, Gate Post is worth approximately $396,000.00. Even if Vivian Zacharias can claim a homestead exemption on Gate Post—which Creditors assert she cannot—the mortgage shared by the Debtors must be divided equally among their respective undivided one-half interests in the property. That, taken with the fact that Paul Zacharias Sr.'s judgment liens are not affixed to Vivian Zacharias's undivided one-half interest, results in no avoidance and the calculation appears as follows:

| | |
|---|---|
| Half of the Mortgage: | $49,856.16 |
| One Homestead Exemption: | $136,925.00 |
| Subtotal: | $186,781.16 |
| Value of the Property: | ($396,000.00) |
| **TOTAL:** | **-$209,218.86** |

Respectfully submitted,

 /s/ Kevin M. Gross
LEWIS A. ZIPKIN, ESQ. (0030688)
Kevin M. Gross, Esq. (0097343)
ZIPKIN WHITING CO., L.P.A.
Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122
Telephone: (216) 514-6400
Facsimile: (216) 514-6406
Email: kgross.zipkinwhiting@gmail.com
          zfwlpa@aol.com

*Attorneys for Creditors Natalie Locigno and Zipkin Whiting Co., L.P.A.*

## PROOF OF SERVICE

An electronic copy of the foregoing was filed via the Court's CM/ECF system on May 12, 2020. Notice of this filing will be sent by electronic mail through the Court's CM/ECF system to:

Virgil E. Brown, Jr., Esq. (0003675)
4070 Mayfield Road
Cleveland, Ohio 44121
Telephone: (216) 851-3304
Email: virgil@vebtrustee.com
*Chapter 7 Trustee*

    and

Richard H. Nemeth, Esq. (0007392)
NEMETH & ASSOCIATES, LLC
526 Superior Avenue East
Suite 333
Cleveland, Ohio 44114
Telephone: (216) 502-1300
Facsimile: (216) 502-1301
Email: mail@ohbklaw.com
*Attorney for Debtors Paul F. and Vivian E. Zacharias*

                                /s/ Kevin M. Gross
                                KEVIN M. GROSS, ESQ. (0097343)

                                *An Attorney for Creditors Natalie Locigno and*
                                *Zipkin Whiting Co., L.P.A.*